I'm going to make a twofold argument. First argument is that my client was credible. That's a paramount argument. Your client was what? Was credible. And a second argument, even if she was not credible, the objective evidence in the record still allows her to receive There are several facts in the case that are not disputed. Neither IJ nor the government disputed the fact that my client has ethnically mixed composition. She is half Azeri, half Armenian. Therefore, if we look at the background information, it clearly establishes that people of mixed ethnicity, and it's by the United States Department of State report, people of mixed composition ran out of the country with the violence, intimidation, harassment, and beating, and they left the countries, Armenians left Azerbaijan, Azeris left Armenia, in thousands and hundreds of thousands during the pogroms and the war between Armenia and Azerbaijan. Well, just for a moment, if you accept that the adverse credibility finding on the rape does not compel another result, what authority supports your contention that the cumulative allegations aside from the 1990 rape rise to the level of persecution? Well, besides the fact that she testified that she was constantly beaten, harassed, the stones were thrown at her, and everyone at the refugee camp, the same thing were happening to everyone of the people who escaped from Azerbaijan, there were several affidavits in the record that also confirmed the fact that people of mixed ethnicity and refugees from Azerbaijan were taunted and harassed and beaten by locals. In addition to that, there is no issue as to the attempted rape, at least, and that in itself should rise to the 10% of probability that she will be harmed if she returned to Armenia. However, going back to the rape incident, if we read the application for asylum, the judge primarily focused on application for asylum, stating that the rape incident was omitted from the application for asylum. However, the entire body of the text of the application for asylum, there is only one small paragraph related to the Armenian conflict, the rest of the text is talking about persecution in Russia. Only one small, in the middle of the page, paragraph talks about her problems in Armenia. And if we read the text itself, as Amica's brief pointed out, it doesn't say that the rape did not occur. It says that there were attempts, abuse, and rape. So we don't really know what the preparer wanted to say. One thing is for sure, that the preparer was an attorney, wasn't focusing on the incidents of persecution in Armenia. Perhaps Armenian persecution was a very small part of the entire case that was presented at the asylum office. Majority was the history of conflict in Azerbaijan between Azerbaijan and Armenia, her problems in Azerbaijan, and problems in Russia, which at that point wasn't very relevant because she was a citizen of Armenia. However, the incidents of her persecution in Azerbaijan and in Russia also goes to her subjective and objective state of mind because she was constantly on the run. She was run from Azerbaijan. She was run out from Azerbaijan to Armenia. She was run out from Armenia to Russia, and she had no place to stay. Well, there seems to be one of the inconsistencies is the inconsistency between Petitioner's version of the rape and Ms. Zohrabian's version. That is correct. However, Ms. Zohrabian did testify that not only did she – actually, the Petitioner did testify that Ms. Zohrabian was on heavy medication. Second, Ms. Zohrabian explained that it was between 12 to 14 years ago when she communicated about the rape and attempted rape. Also, we need to take a look at the fact that both the rape and attempted rape happened during the Petitioner's applications for a job, and they were very easily to be mixed together because in the same kind of circumstance, she was going to get a job, and at the job she was assaulted. Well, okay, that's – you know, I guess what I'm saying on this here is that was her explanation, and she was given an opportunity to explain, and she did – and the court could have accepted that. But on the other side, we do have a discrepancy in the dates. We do have areas where she didn't describe certain things, and the court was concerned about that. And so at the end of the day, after the court pointed all those out, gave her an opportunity to give explanations, which the court could have accepted, why are we compelled to come to the conclusion that your client wants us to come to as opposed to – it's not a situation that there's not a discrepancy. It's not a – the reports are what they are. She said what she said at those given times. Why are we compelled to do otherwise? Because the discrepancy in dates of the instances that happened 12 to 14 years ago are reasonable. And this Court specifically held in sync that people are not walking around with a time stamp in their brains. It's a human nature. Also, we need to understand that something that happened 14 or 12 years ago, very difficult to recall, especially when it did not happen to this witness. It's this discrepancy between witness and the petitioner's testimony. Petitioner's testimony was consistent with the dates. It is the witness's testimony that was inconsistent that gave rise to the doubt. Well, one side of it is they couldn't get their story straight because it didn't happen. Okay, that's one side of it. And also, she didn't say certain things at a certain time. You know, she gets more specific as the longer she's in this country, obviously. And, you know, the IJ could have felt like, hey, you know, someone could be telling you this. And so that – because obviously as a woman being raped because of your ethnicity, you know, that's a home run. And her story gets more specific as she's here longer and all of that. That's one way the IJ could look at it. The other way is the IJ could have said, well, you know, I believe you. I've seen you testify here, and those are logical reasons why it could have happened that way. But the IJ didn't, you know, why is one more reasonable than the other?  And the attorney, and I'm speculating, perhaps explained which facts of the case were important. When she was with the preparer of the application, the process of the preparing of the application itself demonstrated that nobody paid attention to the specific and essential facts. It is that they just relayed the historical events and just relayed the reasons why she left. We have about 2.45 left. Do you want to reserve for rebuttal? Thank you. We'll hear from the government. May it please the Court, good morning. Alan Virch for the government. The credibility finding that the judge made with respect to the 1990 rape turns far less on the inconsistencies in the documents than it does on the inconsistency between the testimony of Petitioner and her friend, Mr. Krobian. Indeed, the judge made that explicitly clear when the judge talked about and essentially credited the Petitioner's explanation for why the rape didn't show up in the earlier asylum application, or in the asylum interview. The judge said, I can understand why she may not have been, or why she might not have told the story, because of the presence of her daughter and also because the asylum officer was a male. So it's clear that the tempest in the briefs about the inconsistencies having to do with whether she didn't tell the story is not what's driving the immigration judge's decision. And in fact, the immigration judge makes it very clear that she's basing her credibility finding on the demeanor of Mr. Krobian, when the judge says on page 55 that when confronted the witness, when the court confronted the witness with the fact that the respondent had testified that the rape occurred in 1990, while the witness was still living in Armenia, she, being Sir Krobian, was taken aback for a minute. And then she changed her testimony to indicate that she did not recall correctly, and therefore that it did occur when she was still there. And indeed, the record bears this out on 132, 133. You'll see that it's only after being confronted with the inconsistency that Mr. Krobian reaches for all kinds of excuses, such as I was on medication or I am on medication now, it's been a long time. But the record is clear that this is an important distinction, because in 1990, Mr. Krobian and the petitioner were living together. And Mr. Krobian was providing material support, was very involved in their life. Mr. Krobian left before 1992, and so for them to communicate, they would have to have done so by phone, which is what the record says. And so her story was that she heard about the rape in 1992 by phone when they were in different countries. I believe one of them may have been in America. This is not the sort of thing that gets easily glossed over or mistaken. That's why it's so important. That's why it's so central to the findings of the IJ. Well, assuming that that is upheld, did the IJ believe the petitioner on everything else? Was the petitioner, and if so, why isn't that enough? You know, pull the rape out. Why isn't everything else enough to show past persecution? The other events don't rise to the level, Your Honor. The attempted rape in 1992, there was no indication that that either happened or was tied to her. She said it happened. If she said it happened, was she found incredible on that? No, no, excuse me, on this book. The attempt, the record shows that the attempt happened. But it didn't, there's nothing that shows that it was tied to her ethnicity or that the government either did it or acquiesced in it. Indeed, the record on reporting is also very clear where she, on page 89 of the record, she's asked, after the 1990 attack, presumably the rape, and the 1992 attack, the attempted rape, did you report what happened to any authority figures? Answer, the authorities would not protect us. Did you approach, question, did you approach anyone in authority and file a complaint? Answer, no, I was afraid. That's the evidence on government link, and the IJ was fully correct to find that that was not, that that would not rise to the level of persecution because of the lack of a link. What about the arson and, you know, the beatings and that sort of thing? There's no evidence of actual beatings, nor evidence that she was ever hit by a rock. The only evidence is that when she was with groups of other people in her ethnic group, that there were other groups who threw rocks at her and the group as a whole. And that's consistent with the State Department reports of ethnic harassment. But that sort of harassment or discrimination does not rise to the level of the severe conduct necessary to show persecution. I'm not sure I quite understood your answer to the previous question. Are you suggesting that an attempted rape does not rise by itself to the level of persecution, or is your argument that there's no, it does, it could rise to the level of persecution, but lacks sufficient nexus? That's my argument, Your Honor. I said you already said that. The latter was not precise enough in how I explained it. But yes, there needs to be a link to. Right. I mean, there's no doubt that attempted rape, if a proper nexus had been established, could constitute persecution within the meaning of the act, right? That's right, Your Honor. Similarly, the testimony about, the only other point I think is very important to make, is about the identity of the attacker or would-be attacker in the 1990 attempt. On page 87, there are questions from lines 6 through 12 about was this a government official or not. And she gives several stories that she's not very clear about it. But her last answer was that the business was a cooperative private business. The I.J. is fully entitled to credit the last answer as being the definitive answer. The I.J. is in a unique position to know from the witness's testimony whether the witness is presenting this as a correction of the prior testimony or as a synonym or if the witness is simply confused. The I.J. clearly found that the person, the male person here, was not a government official. And on the basis of this testimony, there's nothing that compels a contrary finding. The rest of the testimony and evidence is even weaker from our perspective in terms of showing that he was a government official. Well, what if, let's say, what if we disagreed with you and felt that the, pull the 1990 rape out as she was found incredible on that. With everything else, what if we disagreed with you and said, felt that she was entitled to a presumption of past, you know, that there was, that she had established persecution, past persecution. What do we do then? Well, then it would be up to the government to rebut the presumption, Your Honor. Now, the two briefs talk about that with respect to their return visits and all that. I don't, the two briefs sort of talk past each other on that issue, Your Honor. I'm not sure that the brief visits that she, the one-day visit and the two-week visit back to government to get visas, I'm not sure that that would be enough to rebut the presumption, but I would think you would need to. Well, are you asking us, excuse me, I guess I'm not understanding your answer. Well, I think you would need to. Are you saying, procedurally, are you saying that we should decide whether or not the presumption was rebutted on the basis of this record? No, you would need to remand it, Your Honor. The one brief says, she argues that this is enough to show future persecution. I'm getting confused on this. One of them is that whether it's enough to show future persecution, and the other brief argues that it's not enough to rebut. And essentially both briefs are correct, and you would need to remand to get that determined, if you were to find that there were past persecution. As I've indicated before, I don't think that's where you're at. The rape is the central event. The credibility findings made by the judge are... But we still have to, based on this record, if first we have to decide is the adverse credibility finding upheld on the rape. Right. Because if we didn't feel that that was upheld, then if she were presumed credible on that, then clearly there's past persecution. That's right. All right, but if we decided that it doesn't compel a different result, then my understanding of the record is everything else, the judge did not make an adverse credibility finding on her, correct? I mean, the judge may have said there wasn't a nexus, say, on the attempted rape, but the judge didn't. Well, the judge did find that the return visits don't establish future persecution. Well, but I'm asking just in terms of the... Is she credible on everything else left? I mean, did the court say he wasn't credible on any of those things? I actually don't know the answer to that, Your Honor. The only adverse credibility finding is as to the rape, right? I think that's right. I think that's right, Your Honor. I think that's right, Your Honor. I mean, on page 57 she says summarily that the respondent has failed to establish he testified credibly regarding past persecution. That seems to imply everything. Thank you, counsel. Rebuttal. Well, the government counsel points to the page 57. I'll point to the page 56. She specifically says in the middle of paragraph the respondent has failed to establish that she has testified credibly and is worthy of belief as to the fact that she was raped by the Armenian on account of her ethnicity. That's the only part of her testimony, petitioner's testimony, that was found incredible. The only reason it was found incredible, because it was contradicted by the witness who was on medication, who testified about events that happened 12 to 14 years ago. Other than that, the entire testimony was credible. Also, replying to the government's assertions that she did not complain, page 87, the government pointed to the fact that 89, that she did not complain. He said, no, I was afraid. She was explaining the incidents. However, the page 90, when she was describing the incident of his barracks and throwing drugs, she said, yes, we informed authorities. And then she informed the chairman of the collective farm, who is the authority figure. It's like a mayor of that area. And when she was asked, and what happened, he laughed at us. So there was no reason for her to go back again to the authorities because she knew the people's attitude towards mixed Azeri-Armenian ethnicity. She was constantly harassed. She was constantly beaten. People in her situation also were constantly beaten and harassed. So she tried to complain a couple of times on different occasions. Nevertheless, she did not get any response from the government, and she obviously sees the situation around her. There is no reason to complain again. It's useless. Finally, I don't believe that she wasn't targeted by the government because she lived in the situation where the local government controlled everything and refused to act. And the local government's son actually went after her. Even if it wasn't the government, assuming Arguendo, the government wasn't able or willing to control. State Department report clearly demonstrated that when the hundreds of thousands of Azeris were driven from Armenia, or Armenians were driven from Azerbaijan, governments didn't care. They didn't do anything to stop. They couldn't do anything. They didn't want to do anything because there was a war between two countries. So for her to be even persecuted by the locals, she had no way to go to the government and ask for help because government, in fact, encouraged her to leave. Everybody in the area was telling her, leave, leave, and leave. You don't have to be here. She didn't speak the language. She spoke only Russian. Once she opens her mouth, everybody knows she's not there. And besides the fact that her passport clearly demonstrates she was born in Azerbaijan, everybody knows where she came from, and besides the fact that she was ethnically mixed. In addition to that, government is arguing that the presumption was rebutted. Number one, they're arguing it has to be remanded. It doesn't have to be remanded. There were numerous reports that show that they couldn't possibly rebut the presumption. Nevertheless, in addition to that, they're arguing one day return and two weeks return rebutted the presumption. One day return and being in hiding cannot possibly rebut the presumption because she was there just for one day. And in two weeks, she testified she was in hiding, in constant hiding. She only got the visa and she left the country. I don't believe, and I disagree with the government, that by the fact that she returned just to pick up her visa and leave, the fact itself rebuts the presumption of future persecution. Thank you, counsel. Thank you.
judges: Roth , Thomas, Callahan